UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD STOLLE, | ) | CASE NO. 5:12-CV-1488 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| KENT STATE UNIVERSITY, | ) | MEMORANDUM OF OPINION |
| et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the Court on a motion for summary judgment by Defendant Richard Kolbe (Doc. 21) and a motion for summary judgment filed by Defendants Kent State University, Richard Kolbe, John Thornton, and Kathryn Wilson.  Doc. 47.  Kolbe's motion is GRANTED.  The remaining Defendants' motion is DENIED.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Ronald Stolle is a former faculty member of the Department of Finance at Kent State University. He began teaching at the university in 2000 and later held a full-time, non-tenure track position as an Assistant Professor.  In late 2010 and 2011, Stolle wrote several letters to Ohio legislators urging them to replace the state's tenure system in colleges and universities with a pay-for-performance model to help mitigate the rising costs of higher education. On January 13, 2011, approximately one week after sending a letter to Ohio's Speaker of the House, Finance Department Chair John Thornton and Assistant Dean of Faculty Richard Kolbe[1] met with Stolle to discuss his letter.  Stolle alleges he was told at that meeting to "cease and desist" from engaging in such conduct. The following weekend, the Cleveland Plain Dealer

---

[1] In May 2011, Defendant Kolbe resigned from Kent State University to accept a position at Northern Kentucky University.

and Columbus Dispatch newspapers published an opinion piece drafted by Stolle that was also critical of the state's tenure system.

On February 29, 2012, Stolle received a letter from Thornton indicating that Thornton had accepted the faculty's 3-1 vote to recommend that Stolle's contract not be renewed. Stolle appealed the decision to the Interim Dean, Kathryn Wilson. Wilson affirmed the recommendation for non-renewal on March 5, 2012, and Stolle's employment was ultimately terminated.

On June 12, 2012, Stolle commenced this lawsuit pursuant to 42 U.S.C § 1983, alleging that the University violated his First Amendment and Fourteenth Amendment rights of free speech. The initial lawsuit named five defendants, including Kolbe.

Defendants admit that Kolbe participated in the January 2011 meeting, but they deny that any university officials ordered Stolle to "cease and desist" from engaging in similar conduct in the future. Instead, Defendants assert that "Plaintiff was informed at the meeting the issue was not his expressing an opinion to the Speaker but that by placing the letter on University letterhead he was making a formal presentation to the legislature, which was a clear violation of University policy."

On October 22, 2012, Kolbe filed a motion for summary judgment on the grounds that Kolbe had resigned from the university nine months prior to the decision to terminate Stolle's employment, played no part in the decision to terminate his employment, and is therefore entitled to summary judgment, dismissing the claim against him as a matter of law. Kolbe, in his affidavit, also addresses the meeting he had with Plaintiff on January 13, 2011, stating, "[n]either Dr. Thornton nor I told him not to express his personal opinions to the Speaker, but only that he could not do so on University letterhead." Doc. 28-1 at 2.

Stolle opposed Kolbe's motion and offered his own affidavit in support. Stolle contends that a reasonable person's speech would have been chilled by virtue of Kolbe's comments during the January 13, 2011 meeting.

On March 18, 2013, the remaining Defendants moved for summary judgment. Defendants claim that no violation of Stolle's First Amendment rights occurred at any time. Moreover, Defendants assert that Stolle's contract would have been non-renewed regardless of his speech. Stolle has opposed the motion, asserting that his speech rights were violated and that a question of fact remains regarding whether his termination would have occurred in the absence of his protected speech.

The Court now resolves both motions.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(a). The initial burden of showing the absence of any "genuine issues" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing former Fed.R. Civ.P. 56(c)).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. (quoting former Fed.R. Civ.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id*. at 252. Moreover, the Court must view a summary judgment motion "in

3

the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-moving party. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). Accordingly, summary judgment analysis asks whether a trial is necessary and therefore is appropriate when there are no genuine issues of fact. *Anderson,* 477 U.S. at 250.

### B. Kolbe's Motion

Kolbe moves this Court for summary judgment on grounds that he had resigned from Kent State University nine months before Stolle received a letter notifying him of the university's decision not to renew his employment contract. Kolbe argues that his lack of involvement in the decision to non-renew Stolle's contract entitles him to dismissal of the claim against him.  Stolle does not dispute that Kolbe was no longer employed by the university when the faculty voted 3-1 to not renew his contract. Stolle also does not dispute that Kolbe was no longer employed by the university on February 29, 2012, when Stolle received his termination letter. Finally, he does not dispute that Kolbe's employment had in fact ended nine months prior to his receipt of the termination letter.   Stolle, however, contends his actual termination is not the only act of retaliation for which he seeks relief.  Stolle contends that Kolbe's statements during the meeting of January 13, 2011 also constituted an "adverse action" against him insofar as the alleged statements amounted to a threat of termination.

To establish a *prima facie* case for a First Amendment retaliation claim, public employees are required to show that they: (1) engaged in constitutionally protected conduct; (2)

were subjected to an adverse employment action or deprived of some employment benefit; and (3) that the protected speech was a "substantial" or a "motivating factor" for the adverse employment action. *Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891 (6th Cir. 2001).

For purposes of Kolbe's motion, this Court need only address the second element articulated above – specifically, to what extent Kolbe's actions may have constituted an adverse employment action or deprived Stolle of some employment benefit. As the Sixth Circuit has noted, "[e]ven the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).

There is no question that Kolbe has met his initial burden by virtue of providing an affidavit that specifies that Stolle was never told "not to express his personal opinions to the Speaker, but only that he could not do so on University letterhead." Upon review, however, the Court finds that Stolle has not put met his reciprocal burden. Stolle's affidavit states, "Professor Thornton and Dean Kolbe informed me that my letter to the Speaker of the House had reached the administration and that I had violated University policy when I sent it. They ordered me to cease and desist from engaging in similar conduct in the future. **I understood** from both Kolbe and Thornton that if I continued to correspond with state legislators I would likely lose my position at Kent State University." Doc. 21-1 at 2 (emphasis added).

Stolle has stated what he "understood" from the meeting of January 13, 2011. But he has not put forth evidence that Kolbe or any other university official for that matter made any statements threatening him with termination or other adverse action. Instead, Stolle attempts to rely on his complaint rather than "produce evidence that results in a conflict of material fact to be resolved by a jury," as required under *Cox*. Stolle cannot rely on what he personally understood

5

Kolbe's statements to mean. He must show that Kolbe's actual behavior constituted a violation of his rights. He has failed to do so. If the Court were to find a genuine issue of fact herein, it would effectively convert Stolle's claim into an entirely subjective analysis. As noted above, to constitute an adverse action, the conduct must "chill a person of ordinary firmness" from continuing the speech. *Jenkins v. Rock Hill Local School Dist.*, 513 F.3d 580, 585-86 (6th Cir. 2008). As such, the Court's must employ an **objective** standard. As Stolle has not put *any* evidence of Kolbe's actual conduct or speech during the hearing, he cannot possibly demonstrate an issue of fact under the proper objective standard. Accordingly, Kolbe's motion for summary judgment is well taken.

### C. Remaining Defendants' Motion

With respect to the motion for summary judgment filed by the remaining Defendants, the parties appear to agree that Stolle has met his prima facie case with respect to the non-renewal of his contract. Furthermore, consistent with the above analysis, the Court finds that Stolle cannot maintain any claim based on the January 13, 2011 meeting. As a result, this Court must answer only question – whether there exists a genuine issue of material fact regarding whether Stolle would have been non-renewed even in the absence of his protected conduct. As the Supreme Court has explained:

> Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor" or to put it in other words, that it was a "motivating factor" in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct.

*Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) (footnote omitted). "[T]he question for the court under *Mt. Healthy* [is] whether a reasonable fact finder, a

6

jury, would have to find that the defendants would have disciplined [Plaintiff] even in the absence of the protected conduct." *Smith v. Mosley*, 532 F.3d 1270, 1279 (11th Cir. 2008) (citation and quotation omitted). "Alternative justifications present issues of fact not amenable to summary judgment unless the evidence is so one-sided that one party must prevail as a matter of law." *Smith v. Smith*, 2006 WL 2855076, at *11 (N.D.Ohio Sept. 29, 2006).

While the parties offer wildly different analyses under this standard, the Court finds that the issue presented is straightforward. Defendants claim that there exists substantial objective evidence that one non-tenure track faculty member had to be eliminated due to budgetary and programmatic restraints. The Court agrees. The record makes clear that there would be a reduced load of classes in the finance department due to the elimination of a program that had consistently been a strain on the finance department's budget. Moreover, the Court finds that there is no genuine issue of material fact surrounding the fact that Defendant Thornton was required to eliminate a non-tenure track position as a result of these budgetary and programmatic constraints.

However, it does not follow that the Court must grant summary judgment in Defendants' favor. While Defendants argue that they have shown by a preponderance of evidence that Stolle would have been non-renewed even in the absence of his protected conduct, their evidence has only shown that Thornton was presented with circumstances that justified **a** non-renewal, not specifically **Stolle's** non-renewal. In essence, Thornton was faced with making a subjective non-renewal decision between Stolle and another non-tenure track professor, David Dumpe. In providing the reasons for choosing to non-renew Stolle instead of Dumpe, Defendants cite to teaching awards received by Dumpe, his status as Professional Qualified, and other services he

7

provided to the University. However, Defendants also concede that Stolle's teaching "was adequate" and that he oversaw undergraduate individual investigations.

Based upon all of the above, the Court finds that a jury *could* find that Defendants would have non-renewed Stolle even in the absence of his protected conduct. However, the evidence is not so one-sided that judgment as a matter of law is appropriate. Instead, the evidence reflects that Thornton, the decision-maker, was faced with a choice over whether to non-renew Stolle or Dumpe. In a similar fact pattern, plaintiff Norman Deep asserted that his school district violated his First Amendment rights when it refused to appoint him athletic director because of a prior lawsuit he had filed against the district. In analyzing the *Mt. Healthy* defense, the Second Circuit noted:

> Then District Superintendent Jeffrey Roudebush and Principal Richard D. Hunt testified unequivocally that a successful Athletic Director should have strong adult-to-adult interpersonal skills and should be able to interact and communicate effectively with District administrators, coaches, and other Athletic Directors. As to the three candidates who applied, Roudebush and Hunt confirmed that Fiore, not Deep, best exemplified these qualities, and on that basis, Roudebush recommended Fiore to the Board Members for selection. In addition, those Board Members who testified confirmed that for both the Interim Athletic Director position and the Permanent Athletic Director position, the only person Roudebush recommended was Fiore, and that the Board voted on that recommendation and appointed Fiore to the positions. We conclude this evidence was more than sufficient to support the jury's verdict as to Defendants' *Mt. Healthy* defense.

*Deep v. Coin*, 453 Fed. Appx. 49, 52-53 (2d Cir. 2011). It is important to note that the position of the school district was presented *at trial*. Similar to *Deep*, trial is necessary in this matter to determine whether Stolle's protected conduct was the "but for" cause of his termination. *See id.* (citing *Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 877 (2d Cir. 1988)).

Herein, the quantitative and qualitative differences between Dumpe and Stolle are not so strong that a jury would be *compelled* to conclude that Stolle would have been terminated even if he had not engaged in his protected speech. Instead, when examining all of the facts, a jury

8

could conclude that Stolle and Dumpe were effectively equals or that Stolle was in fact a better choice to be renewed.  If that were the case, a just could conclude that Stolle's prior protected conduct was the "but for" cause of his termination.[2]  That is, a jury could conclude that "but for" writing the editorials at issue, Stolle would have been renewed and Dumpe would have been non-renewed.  As there exists a genuine issue of material fact over whether the protected conduct was the but for cause of Stolle's termination, the remaining Defendants' motion for summary judgment must be DENIED.

In resolving this motion, the Court has been careful not to convert this analysis into a pretext analysis.  In reviewing a *Mt. Healthy* defense, pretext plays no role whatsoever.  *Deep*, 453 Fed. Appx. at 55.  Instead, the Court has followed *Mt. Healthy*'s teaching that summary judgment is appropriate on this defense only if a jury would be compelled to find that discipline would have occurred even in the absence of protected conduct.  Such a conclusion cannot be drawn as a matter of law herein.

### III.  CONCLUSION

Kolbe's motion for summary judgment is GRANTED.  The remaining Defendants' motion for summary judgment is DENIED.

**IT IS SO ORDERED.**


Dated:  7/18/13                                         */s/ John R. Adams*
                                                       **JOHN R. ADAMS**
                                                       **UNITED STATES DISTRICT JUDGE**

---

[2] Thornton was admittedly not pleased with the editorials written by Stolle during his time as a professor.  In fact, Thornton forwarded a copy of the editorials to two colleagues in the finance department indicating that it would raise their blood pressure.  Thornton also emailed colleagues with the following: "I fully expect the Administration will be seeking Ron's scalp.  I don't think we should attempt to an extraordinary review until they decide what they want to do."  Doc. 50-5 at 1.

9